# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ERIC S. WOOD,

       **Plaintiff,**

    **v.**           **Case No. 22-CV-627**

KILOLO KIJAKAZI,
**Acting Commissioner of the Social Security Administration,**

     **Defendant.**

## DECISION AND ORDER

### 1. Introduction

Alleging he has been disabled since January 31, 2014 (Tr. 29), plaintiff Eric S. Wood

seeks supplemental security income and disability insurance benefits. He was insured

through December 31, 2019. (Tr. 29.) After his application was denied initially (Tr. 74-75)

and upon reconsideration (Tr. 110-111), a hearing was held before Administrative Law

Judge (ALJ) Dean Syrjanen on June 30, 2021 (Tr. 45-68). On July 9, 2021, the ALJ issued a

written decision concluding that Wood was not disabled. (Tr. 40.) After the Appeals

Council denied Wood's request for review on February 25, 2022 (Tr. 15-20), Wood filed

this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 7), and the matter is ready for resolution.

## 2.    ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Wood "has not engaged in substantial gainful activity since January 31, 2014, the alleged onset date." (Tr. 29.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Wood has the following severe impairments: degenerative disc disease, obesity, anxiety disorder, and depressive disorder. (Tr. 30.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Wood "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 30.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Wood has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting and carrying no more than 15 pounds and occasionally stooping. He requires the ability to alternate positions every 15 minutes without leaving the workstation. He is limited to simple routine tasks in jobs involving simple changes that occur no more than occasionally, and no more than occasional interaction with supervisors, coworkers, and the public.

(Tr. 32.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Wood "is unable to perform any past relevant work." (Tr. 39.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that Wood could "perform the requirements of representative occupations such as ticket counter (DOT 219.587-010), with 60,000 jobs in the national economy; final assembler (DOT 713.687-018), with 20,000 jobs; and ampoule sealer (DOT559.687-014), with 20,000 jobs." (Tr. 40.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the

Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4.     Analysis

### 4.1.     Consultative Psychological Examiner's Opinion

Consultative psychological examiner Dr. Mark Pushkash concluded in a June 2020 psychological report that Wood's "ability to concentrate and persist on tasks in a work environment would be markedly impaired due to the interfering effects of anxiety and panic" and "that he might also have some difficulties relating appropriately to supervisors and coworkers because of a depressed mood." (Tr. 422.)

An ALJ must assess a medical opinion in terms of its persuasiveness, paying particular attention to how well the expert supports his opinion, how consistent the opinion is with the record, the expert's relationship with the claimant, the expert's specialization and expertise, and any other particularly relevant factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Although an ALJ must consider all of these factors, he need only explain how he considered supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

The ALJ found Pushkash's opinion unpersuasive because it was inconsistent with Wood's treatment records and daily activities showing "reasonable mental function," "cooperative" and appropriate behavior around others, and "a lack of extensive longitudinal mental health treatment during the relevant period." (Tr. 38.) The ALJ accordingly disregarded Pushkash's recommendations when determining Wood's mental RFC. (Tr. 38.)

Wood sets forth several arguments challenging the ALJ's analysis of Pushkash's opinion. (ECF No. 13 at 21-23.) Woods first argues that, because Pushkash is an "examining agency physician" who is "unlikely … to exaggerate an applicant's disability," his opinion is entitled to more deference than that of a nonagency source who has not examined him. (ECF No. 13 at 23 (citing *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017); *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *Garcia v. Colvin*, 741 F.3d 758, 761-62 (7th Cir. 2013)).)

Wood's argument fails to account for the change in medical opinion regulations governing claims for benefits filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The cases Wood cites to support his claim that Pushkash's opinion—as that of an examining agency source—is entitled to "more deference" were decided under the regulations governing "claims filed *before* March 27, 2017," which provided that more weight is to be given to the "medical opinion of a source who has examined [the applicant] than to the medical opinion of a medical source who has not." *Id.* § 404.1527(c)(1) (emphasis added).

But Wood filed his claim after March 27, 2017. (Tr. 242, 244.) Therefore, the new regulations apply to Wood's claim. *Id*. § 404.1520c. Under the new regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the applicant's] medical sources." *Id*. § 404.1520c(a). As such, the ALJ was not obligated to give more deference to Pushkash's opinion.

Wood also claims that the ALJ "did not reference a single piece of contrary evidence in the record" when discounting Pushkash's opinion that Wood's anxiety would "markedly impair[]" his ability to concentrate and persist on tasks in a work setting. (ECF No. 13 at 22.)

The ALJ explained that Pushkash's "markedly impaired" finding "was inconsistent with evidence showing reasonable mental function." (Tr. 38.) While the ALJ did not cite directly to contrary "evidence showing reasonable mental function" in the paragraph in which he analyzed and rejected Pushkash's opinion (Tr. 38), he did cite to such evidence earlier in his decision (Tr. 31, 34-35). The ALJ pointed out that Wood's providers and examiners "have noted normal alertness and orientation" (Tr. 31 (citing Tr. 340-44, 347, 351, 357, 362, 375, 388, 392, 395, 398, 411, 420)), and that Pushkash himself observed during the June 2020 exam that Wood "was able to pay attention," exhibited "no signs of distractibility," and correctly performed tasks of simple calculation and short-term recall (Tr. 34-35 (citing Tr. 420-21)). Further, the ALJ noted that Wood was

"able to engage in activities demanding some ability to see a task through to completion and sustain focus and attention," such as "performing personal care tasks, taking care of his newborn baby, driving, shopping, counting change, and using a checkbook or money order." (Tr. 31 (citing Tr. 281, 283, 351).)

Although the ALJ did not repeat his citations to evidence of "reasonable mental function" in his analysis of Pushkash's opinion, he was not required to. *Everson v. Kijakazi*, No. 21-CV-716, 2022 WL 3656462, at *6 (E.D. Wis. Aug. 25, 2022) ("Those records bolster the ALJ's conclusion that Dr. Rademacher's own findings did not support her extreme opinions; the ALJ did not need endlessly to repeat her citations throughout the decision." (internal citation omitted)). Doing so would be redundant and unnecessary, which is why the Seventh Circuit has stressed "the importance of reading the entirety of an ALJ's decision together." *See Krug v. Saul*, 846 F. App'x 403, 407 (7th Cir. 2021) (citing *Zellweger v. Saul*, 984 F.3d 1251, 1254-55 (7th Cir. 2021)); *see also Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("An [ALJ] need not rehash every detail each time he states conclusions on various subjects….").

The ALJ reasonably concluded that Pushkash's "markedly impaired" finding "was inconsistent with evidence showing reasonable mental function" and cited to evidence in the record sufficient to support that conclusion. And, notably, Wood fails to cite to a single treatment record documenting any deficits in Wood's attention or

concentration on examination to bolster Pushkash's "markedly impaired finding." (ECF No. 13 at 21-23.)

Finally, Wood argues that his sometimes cooperative and pleasant behavior in treatment settings is an improper basis for disregarding Pushkash's opinion that he might struggle with "relating appropriately to supervisors and coworkers" in a work setting. (ECF No. 13 at 21-22.) "[T]he fact that … Wood may have been pleasant or cooperative during some therapy sessions … ignores the episodic nature of his impairment and is a poor indicator of how [he] would act in a typical work environment, which involves stressors that are absent in a treatment setting." (ECF No. 13 at 22.)

The regulations provide that an ALJ must consider a medical opinion's consistency when evaluating its persuasiveness and that the "more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2). Thus, in judging the persuasiveness of Pushkash's opinion that Wood's depression might cause him "some difficulties relating appropriately" to coworkers, it was proper for the ALJ to consider whether the opinion was consistent with Wood's longitudinal treatment records and his statements to medical providers.

The ALJ noted that Wood's treatment records indicate that he was cooperative during examinations and exhibited normal behavior. (Tr. 31 (citing Tr. 364, 392, 395, 431).) The ALJ also noted that Pushkash found Wood "pleasant, friendly, and cooperative"

during the June 2020 examination, with "good eye contact" and "normal social responsiveness," and that Wood reported to Pushkash that he "got along reasonably well with others and does not engage in argumentativeness, impulsiveness, or aggression." (Tr. 35 (citing Tr. 420).) It was reasonable for the ALJ to find this evidence inconsistent with Pushkash's equivocal opinion that Wood "might have difficulty relating appropriately to supervisors and coworkers." (Tr. 422.)

In sum, the ALJ reasonably weighed Pushkash's medical opinion against other evidence in the record in accordance with 20 C.F.R. § 1520c to conclude that the opinion was not persuasive. Therefore, the ALJ's dismissal of Pushkash's opinion does not compel remand.

### 4.2. Mental RFC

"In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing SSR 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)). An ALJ's RFC analysis must "rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (citations omitted). "[W]ithout at least some reliance on any medical opinions, substantial evidence is lacking from the ALJ's RFC determination." *Joel B., o/b/o Melissa B. v. Kijakazi*, No. 21-cv-1894, 2022 WL 2589785, at *6 (S.D. Ind. July 7, 2022).

Case 2:22-cv-00627-WED   Filed 01/30/23   Page 10 of 26   Document 21

Although "ALJs are empowered to reject medical opinions and prior administrative medical findings that are inconsistent with the evidence of the record," *Kara v. Kijakazi*, No. 20-cv-344, 2022 WL 4245022, at *3 (E.D. Wis. Sept. 15, 2022) (citing 20 C.F.R. § 404.1520c), if doing so "results in a complete absence of valid expert opinions, the ALJ should summon a medical expert who can review the record and offer an opinion grounded in the evidence." *Id.* (citing *Jennifer B. v. Saul*, No. 19-cv-347, 2020 WL 2520996, at *8 (N.D. Ind. May 18, 2020)).

The ALJ found that Wood's anxiety and depression resulted in moderate limitations with concentrating, persisting, or maintaining pace; adapting or managing himself; and social interactions. (Tr. 31.) To account for the impact of these moderate limitations on Wood's work-related abilities, the ALJ included certain restrictions in Wood's mental RFC:

> Due to moderate limitations in concentration and task completion, [Wood] is [restricted] to simple routine tasks. His limitations in adapting or managing himself warrant the [restriction] to simple changes that occur no more than occasionally. Finally, due to limitations with social interaction, he is [restricted] to occasional interaction with supervisors, coworkers, and the public.

(Tr. 36.)

Wood argues that the ALJ's mental RFC finding lacks the support of substantial evidence because the restrictions included are inconsistent with the psychological expert opinion evidence in the record. (ECF No. 13 at 9-13.) The Commissioner responds that the ALJ included in Wood's mental RFC all restrictions supported by the medical record

11

and that Wood "fails to demonstrate that the record compelled further restrictions." (ECF No. 19 at 3.)

As addressed above, the ALJ analyzed and rejected Dr. Mark Pushkash's opinion in accordance with 20 C.F.R. § 1520c. (Tr. 38.) The record contains two other psychological expert opinions: from Dr. Kyla Holly (Tr. 88-90) and from Dr. Lisa Fitzpatrick (Tr. 128-32). Wood does not challenge the ALJ's analysis of Holly's and Fitzpatrick's opinions; rather, he argues that Wood's mental RFC deviates from all three psychological expert opinions. (ECF No. 13 at 13.) As such, Wood's mental RFC is not grounded in psychological expert opinion but in the ALJ's lay view of the evidence.

In a September 2020 mental RFC assessment reviewing psychologist Dr. Kyla Holly found that Wood would be able to "carry out 2-3 step instructions at a reasonable pace in a competitive environment" and "work near, but not directly with, others"; and that he was "best suited for a more low-stress environment" and "capable of routine, unskilled work." (Tr. 88-90). In a December 2020 mental RFC assessment reviewing psychologist Dr. Lisa Fitzpatrick found that Wood could "maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods within normal supervision"; "could tolerate the minimum social demands of simple-task settings"; "would not be able to tolerate sustained contact with the general public"; could "tolerate simple changes in routine, avoid hazards, travel independently, and make/carry out simple plans"; and was "capable of routine unskilled work." (Tr. 128-31.)

Case 2:22-cv-00627-WED   Filed 01/30/23   Page 12 of 26   Document 21

The ALJ found that Holly's and Fitzpatrick's opinions were "generally consistent with the evidence" and, therefore, "generally persuasive." (Tr. 37-38.) But the ALJ found that Holly's and Fitzpatrick's opinions were inconsistent with evidence of Wood's daily activities and longitudinal treatment records. (Tr. 38.) Based on these inconsistencies, the ALJ deviated from their opinions in Wood's mental RFC. (Tr. 38.) For example, to account for Wood's moderate limitations with concentration, persistence, and pace, Holly found that Wood could "carry out 2-3 step instructions at a reasonable pace in a competitive environment." (Tr. 89.) The ALJ instead chose to account for Wood's concentration, pace, and persistence limitations by merely restricting him to "simple routine tasks." (Tr. 38.) In explaining why he restricted Wood to "simple routine tasks" rather than Holly's recommended "2-3 step instructions at a reasonable pace in a competitive environment," the ALJ cited Wood's daily activities showing an "ability to complete a task and sustain focus and attention" (Tr. 38 (citing Tr. 281, 283, 351)) and Wood's treatment records demonstrating "normal alertness and orientation" (Tr. 38 (citing Tr. 340-44, 347, 351, 357, 362, 375, 388, 392, 395, 398, 411, 420)).

Holly also found that, due to Wood's moderate limitations in interacting with others, he "would be able to work near, but not directly with, others" and that Wood's "panic attacks would interfere with his ability to interact with the general public." (Tr. 89.) Fitzpatrick found that Wood "would not be able to tolerate sustained contact with the general public." (Tr. 131.) The ALJ determined that restricting Wood to "occasional

interaction with supervisors, coworkers, and the public" would "more than adequately account[] for [Wood's] interaction-interfering symptoms" because he "exhibited cooperative behavior during examinations and [Wood] specifically noted no problems with argumentativeness, impulsiveness, or aggression" in his examination with Pushkash. (Tr. 38 (citing Tr. 364, 392, 395, 420, 431).)

The regulations empower ALJs to reject medical opinions that they find are inconsistent with the record evidence. 20 C.F.R. § 404.1520c. And the court does not find that the ALJ erred in analyzing the medical opinion evidence pertaining to Wood's mental RFC. But where, as here, an ALJ deviates from all medical opinion evidence based on his lay view of a claimant's daily activities and longitudinal treatment records, the resulting RFC finding lacks the support of substantial evidence. *See Kara*, 2022 WL 4245022, at *2 (citations omitted); *see also Joel B.*, 2022 WL 2589785, at *6. Whether the ALJ can properly ground Wood's mental RFC in the opinion evidence currently in the record, or whether he needs to summon a fourth psychological expert to review the record and offer an additional opinion, the decision is his. However, as it stands, Wood's mental RFC lacks substantial evidence because it is not grounded in medical opinion evidence. For that reason, remand is necessary.

### 4.3.    Symptom Severity

The ALJ must assess a claimant's symptoms (*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)") using a two-step process.

SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently

wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Summers v. Berryhill*, 864

F.3d 523, 528 (7th Cir. 2017).

Using frequently employed boilerplate, the ALJ stated:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are *not entirely consistent* with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 33 (emphasis added).) As Wood points out (ECF No. 13 at 16-17), courts have

criticized ALJs' use of the "not-entirely-consistent" boilerplate as suggesting a more

rigorous standard. *See, e.g.*, *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871 (N.D. Ill. 2018);

*Bancolita v. Berryhill*, 312 F. Supp. 3d 737, 744 (N.D. Ill 2018). Other courts, however, have

decided that the inclusion of this boilerplate, by itself, does not necessitate remand. *See,*

*e.g.*, *Giboyeaux v. Saul*, No. 19-CV-76, 2020 WL 439943, at *4 (N.D. Ind. Jan. 9, 2020)

(collecting cases); *Oliver v. Saul*, No. 19-CV-29, 2020 WL 1527843, at *4 (N.D. Ind. Mar. 31,

2020) ("This language is not necessarily fatal so long as the ALJ fully explains his decision

and a 'commonsensical reading' of the entire decision suggests no error." (internal

citation omitted)); *Warden v. Kijakazi*, No. 20-CV-1566, 2022 WL 684838, at *6 (E.D. Wis.

Mar. 8, 2022); *Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021); *Wolvin v. Kijakazi*, No.

21-cv-1328, 2023 WL 371638, at *2 (E.D. Wis. Jan. 24, 2023). The court agrees with the latter

camp. "Plaintiffs would do better to forgo challenging the boilerplate and instead focus

on what the ALJ actually does in the decision." *Seibel v. Saul*, No. 19-CV-643, 2020 WL 1812448, at *7 (E.D. Wis. Apr. 8, 2020).

The ALJ found that Wood's symptom allegations were inconsistent with: (1) the "relatively mild objective medical findings"; Wood's treatment history documenting (2) his success and noncompliance with medication and (3) a "lack of specialized, longitudinal treatment" for anxiety and depression; and (4) "the nature and scope of [Wood's] reported activities," including being the primary caregiver for his newborn baby, tending to personal care tasks, leaving his home twice a day, driving, shopping in stores, managing his finances, and watching television daily. (Tr. 34-36.)

Wood does not take issue with how the ALJ analyzed the objective medical evidence in assessing his symptom allegations. (ECF No. 13 at 16-21.) He does, however, challenge the ALJ's evaluation of his treatment history and daily activities in assessing the credibility of his symptom allegations. (ECF No. 13 at 19-21.)

The ALJ found that Wood's treatment history showing medication noncompliance and a lack of recent mental health treatment undermined the credibility of his symptom allegations. (Tr. 36.) Wood argues that the ALJ erred in making adverse inferences about his credibility based on his medication noncompliance and lack of mental health treatment without considering his reasons for his medication noncompliance and lack of mental health treatment. (ECF No. 13 at 19.)

When asked by the ALJ in his administrative hearing why he had not "participated in more frequent or detailed treatment over the last few years," Wood explained that he had "moved [to Beaver Dam] about four years ago to be [closer to his psychiatrist and therapist,]" but shortly after moving both his psychiatrist and therapist left the practice, forcing him to pursue mental health treatment from other providers. (Tr. 55-56.) Touching on both his medication noncompliance and lack of recent mental health treatment, Wood explained:

> It took me twenty some years of my life to go see [his former mental healthcare providers]. I did not have a desire to take medication. At one point in time, I started with just a therapist. I didn't want to speak to a therapist judging my youth. It wasn't helping me in my mind. I just had too much time on my hands. I was going through a major depression issue. I have always, my whole life, since a child, had issues with anxiety, fears of walking in places, feeling like people were looking at me…. They were working with my medication, so I probably felt the same as about that. They still prescribe me meds and there was nothing more they could do. They said they got to help me get through the day. It is never going to fix the problem.

(Tr. 56-57.) Wood also testified that he had inconsistent insurance coverage during the relevant period. (Tr. 57.)

While an ALJ can consider a claimant's noncompliance with or failure to seek treatment in evaluating the credibility of the claimant's symptom allegations, the Seventh Circuit has held that an ALJ must not draw any inferences about a claimant's condition from the claimant's noncompliance with or failure to seek treatment unless the ALJ explored the claimant's explanations for his noncompliance or failure to seek

treatment. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record … without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints…. We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.").

Although the ALJ did not ask Wood about his medication noncompliance at the administrative hearing, Wood indicated that his noncompliance was, at least in part, a result of his depression and anxiety. (Tr. 56-57.) But the ALJ did not explain how he accounted for Wood's depression and anxiety when determining Wood's medication noncompliance weighed against the credibility of his symptom allegations—possibly because he overlooked Wood's explanation or decided it was not worth mentioning. (Tr. 34-37.) Because "failure to comply with treatment is often a product of the very impairment the treatment is intended to remedy," *Torres v. Kijakazi*, No. 20-C-1033, 2022 WL 843931, at *3 (E.D. Wis. Mar. 22, 2022) (citing *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)), and Wood indicated that his mental health impairments impeded his medication compliance, the ALJ erred in not—at the very least—addressing Wood's explanation in his decision. SSR 16-3p ("We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms."). Moreover, while the ALJ did ask Wood about his lack of recent mental health treatment, and Wood

responded that his anxiety and depression impeded his ability to find new providers after his previous providers retired and that a lack of insurance coverage also contributed (Tr. 55-57), the ALJ did not discuss why he rejected these reasons for failing to continue mental health treatment. This was also error.

Given that the ALJ drew adverse inferences from Wood's medication noncompliance and lack of recent mental health treatment, the ALJ should have evaluated Wood's explanations for those aspects of his treatment history. The ALJ's error was not harmless because a discussion of the factors contributing to Wood's medication noncompliance and his lack of mental health treatment may have impacted the ALJ's credibility determination as well as his RFC determination. In failing to inquire into and address the reasons for Wood's medication noncompliance and failure to pursue new mental health treatment after his former providers retired, the ALJ violated SSR 16-3p. As such, remand is warranted.

Wood also challenges the ALJ's analysis of his daily activities. Wood argues that the ALJ erred in finding that his ability to carry out certain day-to-day activities was inconsistent with his symptom allegations, without noting *how* he carried out these activities. (ECF No. 13 at 17-18.) Wood explained that he continues to take anti-inflammatory medication, anxiety medication, and a muscle relaxer (Tr. 55); watches television while lying in bed (Tr. 60); and cared for his daughter with his sister-in-law's help (Tr. 61). He argues that the ALJ erred by not accounting for these qualifications.

"While an ALJ may err if he misrepresents the nature of [a claimant's] activities by ignoring limitations on or consequences of those activities …, remand is not required simply because the ALJ did not explicitly restate every qualification the claimant placed on her activities." *Hogden v. Kijakazi*, No. 20-CV-1486, 2022 WL 43328, at *5 (E.D. Wis. Jan. 5, 2022) (citing *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008)).

Perhaps the ALJ's discussion of Wood's daily activities would have been more complete had he noted that Wood's medication made his daily activities less burdensome, that Wood had help in caring for his daughter, and that Wood often watched television while lying on his back. However, "these were hardly material qualifications that the ALJ was required to acknowledge." *Hogden*, 2022 WL 43328, at *5; *compare Craft*, 539 F.3d at 680 (finding that the ALJ erred in not acknowledging the defendant's qualifications regarding how he copes with certain daily activities), *with Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (finding that the ALJ's "failure to mention a few limitations on some of Plaintiff's activities … [did not] warrant reversal"). Because the ALJ did not materially misrepresent the nature of Wood's daily activities in finding them inconsistent with his alleged symptoms, the ALJ need not reevaluate Wood's daily activities on remand.

### 4.4. Step-Five Finding

At step five the agency bears the burden of demonstrating that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and

limitations. *See* 20 C.F.R. § 416.960(c)(2). In estimating the number of jobs available to the claimant, "ALJs commonly rely on the testimony of vocational experts—professionals with experience in job placement and knowledge of working conditions." *See Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); 20 C.F.R. § 416.966(e)). If the claimant questions the reliability of the vocational expert's job-number estimate, "the ALJ must compel the vocational expert to offer a 'reasoned and principled' explanation of the methodology [he] used to produce the estimate." *Id.* at 763 (quoting *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018)).

During Wood's administrative hearing a vocational expert testified that an individual of Wood's age and with his education, work history, and RFC could perform the work of a ticket counter, final assembler, and ampoule sealer/hand packager. (Tr. 65.) The vocational expert estimated that there are approximately 60,000 ticket counter jobs available in the national economy, 20,000 final assembler jobs, and 20,000 ampoule sealer/hand packager jobs—or approximately 100,000 jobs available that Wood could perform. (Tr. 65.) The ALJ did not ask for—and the vocational expert did not provide—an explanation of the methodology behind his job-number estimates. (Tr. 64-66.)

After the ALJ was through questioning the vocational expert, he asked Wood's counsel if he had "any follow-up questions for the vocational expert." (Tr. 66.) Wood's counsel responded, "Your Honor, I have no additional questions for the vocational expert." (Tr. 66.) The ALJ subsequently relied on the vocational expert's job-number

estimates to conclude in his step-five finding that there are significant numbers of jobs in the national economy for Wood to perform. (Tr. 39-40.)

Wood argues that substantial evidence does not support the ALJ's step-five finding because the ALJ adopted the vocational expert's job-number estimate without posing a single question to the vocational expert about the methodology he used to produce his estimates. (ECF No. 13 at 5.) The Commissioner argues in response that Wood "waived or forfeited any argument disputing [the vocational expert's] job number estimates by failing to ask him any questions at the hearing and failing to assert a specific objection to his testimony." (ECF No. 19 at 19 (citing Tr. 66).)

Wood relies on *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022), for the proposition that a vocational expert's "testimony must provide a path by which a reviewing court can ascertain how the [vocational expert] arrived at the job numbers," and that, here, the absence of such a path compels remand. (ECF No. 13 at 7.) But in *Ruenger* the claimant's lawyer challenged the vocational expert's job-number estimates at the administrative hearing, preserving the issue for appeal. *Ruenger*, 23 F.4th at 763; *see also Biestek*, 139 S. Ct. at 1153 ("On cross-examination, [claimant's] attorney asked [the vocational expert] 'where she was getting those [job-number estimates] from.'"). Indeed, *Ruenger* stands for the proposition that, "*when a claimant challenges a vocational expert's job-number estimates, the ALJ has a duty to spend time inquiring into the expert's methodology.*" *Id.* at 764 (citing *Chavez*, 895 F.3d at 970) (emphasis added). Wood's lawyer

Case 2:22-cv-00627-WED   Filed 01/30/23   Page 23 of 26   Document 21

did not ask the vocational expert any questions at the administrative hearing, let alone challenge the vocational expert's job number estimates. (Tr. 63-67.)

"When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusions." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *see also Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("[T]he [vocational expert's] testimony was both unobjected to and uncontradicted. Thus, the ALJ was entitled to credit this testimony."); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("[B]ecause Barrett's lawyer did not question the basis for the vocational expert's testimony, purely conclusional though it was, any objection to it is forfeited."). Thus, a claimant "waive[s] any challenge to the [vocational expert's] testimony by failing to ask any questions to reveal shortcomings in the job-number estimates." *Coyier v. Saul*, 860 F. App'x 426, 427-28 (7th Cir. 2021); *see also Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (holding that a claimant "forfeited her argument regarding the vocational expert's testimony about the number of positions for each of the six jobs by failing to object during the hearing").

In keeping with this Seventh Circuit precedent, this court has consistently held that a claimant who is represented by counsel and fails to challenge a vocational expert's job-number estimates at the administrative proceedings waives or forfeits any subsequent argument challenging those estimates. *See, e.g., Goratowski v. Kijakazi*, No. 21-cv-1054, 2022 WL 11054083, at *3 (E.D. Wis. Oct. 19, 2022); *Desotelle v. Kijakazi*, No. 20-cv-

1283, 2022 WL 409184, at *6 (E.D. Wis. Feb. 10, 2022), *appeal docketed*, No. 22-1602 (7th Cir. Apr. 12, 2022); *Fetting v. Kijakazi*, No. 20-C-1268, 2022 WL 873172, at *7 (E.D. Wis. Mar. 24, 2022), *appeal docketed*, No. 22-1901 (7th Cir. May 20, 2022). Wood's lawyer's failure to challenge the vocational expert's job-number estimates at his administrative proceeding resulted in waiver of the issue on appeal. As such, the ALJ's reliance on the vocational expert's uncontested job-number estimates in his step-five finding does not compel remand.

**5.    Conclusion**

While the ALJ was not required to adopt the recommendations of any psychological expert in the RFC, he erred in failing to support Wood's mental RFC with psychological expert opinion. On remand, the ALJ can either support the RFC with psychological expert opinions currently in the record (*e.g.*, by altering the RFC to include additional mental accommodations or by providing a "logical bridge" between the RFC, as it is currently written, and the psychological expert opinions); or he can summon an additional mental health expert to evaluate Wood's record and offer an additional expert opinion, after which the ALJ will reevaluate all mental health expert opinions and craft a new RFC.

The ALJ also erred in finding that Wood's symptom allegations were not credible because they were inconsistent with his medication noncompliance and lack of recent mental health treatment, without addressing Wood's given reasons for those aspects of

his treatment history. On remand, the ALJ must, with an eye to Wood's explanations from the administrative hearing, reevaluate whether those aspects of his treatment history are indeed inconsistent with his symptom allegations and explain his conclusion.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of January, 2023.

WILLIAM E. DUFFIN
U.S. Magistrate Judge